IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHELIA CAMPBELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 10-0095-WS-B |
| ) | |
| PILOT CATASTROPHE SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This matter comes before the Court on defendant's Motion to Dismiss Pursuant to 12(b)(1) or in the Alternative to Compel Arbitration (doc. 21). The Motion has been briefed and is now ripe for disposition.

**I.    Relevant Background.**

Plaintiff, Shelia Campbell, brought this action against defendant, Pilot Catastrophe Services, Inc. d/b/a CMS/Pilot ("CMS/Pilot"), alleging employment discrimination on the basis of her race and age. In her Amended Complaint (doc. 13), Campbell asserted that CMS/Pilot had passed over her for promotion, and instead promoted a younger, less qualified white male, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the federal Age Discrimination in Employment Act, and the Alabama Age Discrimination in Employment Act. In addition to declaratory and injunctive relief, Campbell seeks an award of back pay, front pay, and other monetary damages (including punitive damages).

CMS/Pilot now requests that this action be dismissed or referred to arbitration pursuant to a series of written agreements between the parties. On June 28, 2007, Campbell and an authorized representative of CMS/Pilot signed an agreement that contained an arbitration clause. Three provisions of that agreement are germane to the instant motion. First, the agreement specified that "[i]n the event of a claimed breach of this Agreement … or any aspect of the employment or relationship, or any other dispute or claim, between CMS Catastrophe Services, Inc., its officers, directors, shareholders, agents, attorneys, affiliates, subsidiaries, divisions,

predecessors, and/or successors … and Employee, whether arising in tort or contract or otherwise, CMS and Employee agree to a binding arbitration." (Doc. 22, Exh. A., ¶ 15.) Second, the arbitration clause purports to limit the damages available to Campbell and modify the burden of proof for obtaining such damages, stating that "[t]he Employee and CMS expressly agree that punitive and/or exemplary damages shall not be awarded; however, if an agreement precluding such damages or award is unenforceable, then, in such event, Employee and CMS agree that such award shall be limited to a maximum of 10% of any proven recoverable actual compensatory damages … or to the least amount permitted by law. Employee and CMS further agree that punitive and/or exemplary damages, if allowed and recoverable, shall only be awarded only [*sic*] upon a showing of proof beyond a reasonable doubt of conduct permitting recovery of such damages." (*Id.*) Third, the arbitration section of the agreement concludes with a statement in bold type that "[i]t is the express intent and desire of Employee and CMS that all viable claims, differences and/or disputes that have arisen or may arise or develop between or among them (past, present, and/or future) and whether based on this agreement, in whole or in part or otherwise, regardless of the basis or nature of such, shall be submitted to and resolved by this binding arbitration process." (*Id.*)[1]

---

[1] The June 2007 arbitration agreement was the last of four such agreements executed by Campbell. The other three agreements were dated September 7, 2005, March 3, 2006 and March 18, 2006. (Doc. 22, Exhs. B, C.) The arbitration provisions in each of these agreements appear identical to the June 2007 iteration in all material respects (with the possible exception of the March 2006 agreement, only the first and last pages of which are included in the record), and Campbell does not maintain otherwise. In fact, the primary material difference between the earlier agreements and the June 2007 agreement is the name of the employer. While the June 2007 agreement lists Catastrophe Management Solutions, Inc. as the employer signatory, the earlier agreements name that entity as "Pilot Temporary Services, a division of Pilot Catastrophe Services, Inc." No party has suggested that any one of these agreements is controlling or should be considered to the exclusion of the others. Instead, they largely direct their arguments at the enforceability of those agreements collectively rather than singling out one or another of them. The existence of multiple agreements appears to be a fact with no analytical significance. However, to the extent that there are discrepancies in verbiage (or signatory status) among the agreements, the June 2007 agreement remedies that problem. According to that document, in the event of inconsistencies between the June 2007 agreement and its predecessors, "the terms and provisions of this agreement shall control and be enforced." (Doc. 22, Exh. A, ¶ 13.) For that reason, the Court's analysis will focus on the controlling June 2007 agreement.

Simply put, CMS/Pilot seeks to hold Campbell to the terms of this arbitration agreement. For her part, Campbell maintains that the arbitration provision is unenforceable for the following reasons: (i) it does not expressly encompass federal statutory claims; (ii) it improperly eliminates or impairs her ability to recover punitive damages; (iii) certain at-will language in the agreement "conflicts with federal law and permits racially discriminatory decision-making"; and (iv) CMS/Pilot failed to sign the agreement. Each of these attacks on the validity of the arbitration agreement will be addressed in turn.

## II. Analysis.

### A. *Legal Standard.*

"The validity of an arbitration agreement is generally governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the 'FAA'), which was enacted in 1925 to reverse the longstanding judicial hostility toward arbitration." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005). Consistent with that objective, "[t]he FAA creates a strong federal policy in favor of arbitration," pursuant to which "courts rigorously enforce arbitration agreements." *Picard v. Credit Solutions, Inc.*, 564 F.3d 1249, 1253 (11th Cir. 2009) (citations and internal quotation marks omitted). The Eleventh Circuit has consistently observed that "[t]he FAA creates a presumption in favor of arbitrability; so, parties must clearly express their intent to exclude categories of claims from their arbitration agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1197 (11th Cir. 2008) (citation omitted). In that regard, "federal policy requires us to construe arbitration clauses generously, resolving all doubts in favor of arbitration." *Becker v. Davis*, 491 F.3d 1292, 1305 (11th Cir. 2007); *see also Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1258 (11th Cir. 2003) (strong federal preference for arbitration of disputes expressed by Congress in FAA must be enforced wherever possible). "Generally, a court should enforce an arbitration agreement according to its terms." *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268, 1273 (11th Cir. 2002). "Under the FAA, arbitration agreements are enforceable except where state or federal law provides grounds for their revocation." *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1133 n.13 (11th Cir. 2010).

"The FAA reflects the fundamental principle that arbitration is a matter of contract" and "places arbitration agreements on an equal footing with other contracts." *Rent-A-Center, West, Inc. v. Jackson*, --- U.S. ----, 130 S.Ct. 2772, 2776 (2010). Accordingly, in construing arbitration agreements, courts apply state-law principles relating to ordinary contract formation and

interpretation, viewed through the lens of the federal policy favoring arbitration. *See Caley*, 428 F.3d at 1368 ("in determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts," taking into account the federal policy favoring arbitration).

Under Alabama law, "[a]rbitration provisions are to be treated like any other contractual provision." *Service Corp. Int'l v. Fulmer*, 883 So.2d 621, 633 n.15 (Ala. 2003). A party seeking to compel arbitration must prove "(1) the existence of a contract containing an arbitration agreement and (2) that the underlying contract evidences a transaction affecting interstate commerce." *Allied Williams Companies, Inc. v. Davis*, 901 So.2d 696, 698 (Ala. 2004) (citation omitted). CMS/Pilot having made the requisite showing, "the burden shifts to the opposing party to present evidence either that the arbitration agreement is not valid or that it does not apply to the dispute in question." *Id.* (citation omitted); *see also Blue Cross Blue Shield of Alabama v. Rigas*, 923 So.2d 1077, 1086 (Ala. 2005) (once party seeking to enforce arbitration agreement meets burden of showing existence of agreement, the other side must "present evidence indicating that the arbitration provision is not valid or that it does not apply to the dispute in question").[2] As mentioned, Campbell has articulated several different arguments in an attempt to meet her burden of showing that the dispute presented in the Complaint is not properly referred to arbitration per the parties' agreement.

### B. The Agreement and Statutory Causes of Action.

Plaintiff's first objection is that the arbitration agreement cannot reach this dispute because it does not explicitly recite the parties' intent to arbitrate statutory anti-discrimination claims. Campbell is correct that the arbitration clause does not enumerate claims under Title VII, § 1981, the ADEA, or the AADEA by name; however, she is mistaken as to the legal significance of that omission.

---

[2] In fixing the relevant burdens of proof, Alabama courts deem a motion seeking to compel arbitration to be "analogous to a motion for summary judgment." *The Dunes of GP, L.L.C. v. Bradford*, 966 So.2d 924, 926 (Ala. 2007) (citation omitted). Where a nonmovant seeks to meet its burden by showing that an agreement to arbitrate is invalid, Alabama courts caution that "[s]tatements in motions and briefs are not evidence to be considered by the trial court in ruling on a motion to compel arbitration" and that properly supported motions to compel arbitration should be granted if the nonmovant presents no opposing evidence. *Providian Nat. Bank v. Conner*, 898 So.2d 714, 719-20 (Ala. 2004) (internal citations and quotations omitted).

"In determining whether the parties agreed to arbitrate a particular dispute, courts consider: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute in question falls within the scope of that agreement." *Scurtu v. International Student Exchange*, 523 F. Supp.2d 1313, 1318 (S.D. Ala. 2007) (citations omitted). There can be no question that plaintiff's statutory anti-discrimination claims lie within the scope of the parties' valid agreement. On its face, the arbitration clause by which Campbell agreed to be bound embraces "all viable claims, differences and/or disputes that have arisen or may arise or develop between or among [Campbell and CMS] (past, present, and/or future) and whether based on this agreement, in whole or in part or otherwise, regardless of the basis or nature of such." (Doc. 22, Exh. A., ¶ 15.) As the Eleventh Circuit matter-of-factly observed in examining a similarly expansive arbitration clause, "[t]he agreement reaches this dispute because the agreement reaches any and all disputes." *Anders v. Hometown Mortg. Services, Inc.*, 346 F.3d 1024, 1028 (11th Cir. 2003). The same is true here. Plaintiff having agreed to arbitrate "all viable claims, differences and/or disputes" she might have with CMS/Pilot, her claims under Title VII, § 1981, the ADEA, and the AADEA fall well within the boundaries of that provision.

To the extent that Campbell argues that statutory claims are situated differently than other categories of disputes for arbitration purposes, the law is otherwise. It is well settled that "[s]tatutorily-created causes of action are no exception to the rule that arbitration agreements should be enforced according to their terms." *Picard*, 564 F.3d at 1253 (citations omitted); *Caley*, 428 F.3d at 1367 ("courts have consistently found that claims arising under federal statutes may be the subject of arbitration agreements and are enforceable under the FAA") (citations omitted); *Davis*, 305 F.3d at 1273 ("Generally, a court should enforce an arbitration agreement according to its terms, and no exception exists for a cause of action founded on statutory rights."). Indeed, federal courts routinely enforce arbitration agreements as to statutory causes of action that are not specifically enumerated therein, so long as (1) those causes of action lie within the parameters of the types of claims the parties agreed to arbitrate, and (2) Congress has not foreclosed waiver of a judicial forum for claims under that particular statute.[3]

---

[3] *See, e.g., Koridze v. Fannie Mae Corp.*, 593 F. Supp.2d 863, 867 (E.D. Va. 2009) (finding that parties agreed to arbitrate plaintiff's Title VII claims where agreement provided for arbitration of any dispute relating to or in connection with plaintiff's performance); *Betkowski v. Kelley Foods of Alabama, Inc.*, 697 F. Supp.2d 1296 (M.D. Ala. 2010) (compelling arbitration of (Continued)

Undaunted by these black-letter legal principles, plaintiff insists that statutory claims stand on a different footing than other types of claims for arbitration purposes. As support for this proposition, plaintiff offers a strained and ultimately unsustainable interpretation of a pair of Supreme Court decisions. In *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 119, S.Ct. 391, 142 L.Ed.2d 361 (1998), the Supreme Court found that a "union-negotiated waiver of employees' statutory right to a judicial forum for claims of employment discrimination" must be "clear and unmistakable." 525 U.S. at 80. In so holding, the *Wright* Court specifically limited that principle to the union context, explaining that for "an individual's waiver of his own rights, rather than a union's waiver of the rights of represented employees … the 'clear and unmistakable' standard was not applicable." *Id.* at 80-81; *see also Williams v. Imhoff*, 203 F.3d 758, 763 (10th Cir. 2000) (explaining that *Wright* "left little doubt" that the "clear and unmistakable" standard did not apply to arbitration agreements entered into by individual employees, and that *Wright* reiterated the established principle that a "broad arbitration clause" in an individual agreement could "embrace federal statutory claims").

Notwithstanding *Wright*'s unequivocal distinction between a union waiver of its members' statutory right to a judicial forum for discrimination claims, on the one hand, and an individual's waiver of her own rights to such a forum, on the other, Campbell insists that the dividing line between the two was obliterated by *14 Penn Plaza LLC v. Pyett*, --- U.S. ----, 129 S.Ct. 1456, 173 L.Ed.2d 398 (2009). In that case, the Supreme Court observed that "[n]othing in the law suggests a distinction between the status of arbitration agreements signed by an individual employee and those agreed to by a union representative." 129 S.Ct. at 1465. But

---

plaintiff's ADEA cause of action where arbitration agreement covered "all disputes" involving plaintiff's employment or termination); *Wright v. Washington Mut. Home Loans, Inc.*, 2009 WL 2704577, *2 (N.D. Ill. Aug. 20, 2009) (plaintiff's Title VII and ADEA claims fell squarely within scope of arbitration agreement governing all disputes that concerned plaintiff's employment and termination); *Gillespie v. Colonial Life & Acc. Ins. Co.*, 2009 WL 890579, *8 (W.D. Pa. Mar. 30, 2009) ("[a]lthough the Agreement here does not specifically state that it applies to employment discrimination claims related to the Agreement …, courts have found that a broadly worded arbitration clause, such as the one in this case, governs disputes beyond those that involve the terms of the contract"); *Maddox v. USA Healthcare-Adams, LLC*, 350 F. Supp.2d 968, 975 (M.D. Ala. 2004) (granting motion to compel arbitration of ADEA and ADA claims where arbitration agreement applied to "all claims and disputes" between plaintiff and defendant).

Campbell misconstrues the meaning and import of this passage, taking it out of context. The *14 Penn Plaza* Court was not holding, or even implying, that all rules for enforcement of arbitration agreements as to statutory claims are identical in the individual and the collective-bargaining settings. To the contrary, Justice Thomas recognized in the very next sentence that "[t]his Court has required only that an agreement to arbitrate statutory antidiscrimination claims be 'explicitly stated' ***in the collective-bargaining agreement***." *Id.* (emphasis added). Far from overruling or modifying *Wright* on this point, *14 Penn Plaza* followed it.[4] Ultimately, the isolated excerpt championed by Campbell means only that the Supreme Court's determination in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), "that the ADEA does not preclude arbitration of claims brought under the statute … fully applies in the collective-bargaining context" present in *14 Penn Plaza*, just as it did the individual-employee context present in *Gilmer*. 129 S.Ct. at 1465. In other words, Congress did not forbid arbitration of ADEA claims in the *14 Penn Plaza* collective-bargaining setting any more than it did in the *Gilmer* circumstance of individual employee agreements. That unremarkable proposition cannot aid Campbell here.

In short, plaintiff's argument that statutory anti-discrimination claims must be explicitly identified in an individual employee's arbitration agreement in order to be subject to arbitration is contrary to extensive precedent in this Circuit in elsewhere, and proceeds from an out-of-context misreading of a single sentence in *14 Penn Plaza*. This objection to enforcement of the arbitration agreement is, therefore, meritless.

### C.     *The Punitive Damages Restrictions.*

Next, Campbell argues that her arbitration agreement is unenforceable because of its restrictions on punitive damages. As discussed *supra*, the arbitration clause provides that (i) "punitive and/or exemplary damages shall not be awarded"; (ii) if that prohibition on punitive

---

[4] Besides, the *14 Penn Plaza* Court had no occasion to pass judgment on whether the "clear and unmistakable" standard applied to individual employees' waiver of statutory rights because that issue was not presented. *14 Penn Plaza* was a collective bargaining agreement case, not an individual employee agreement case. *See id.* ("The CBA under review here meets that obligation."). Thus, even if *14 Penn Plaza* had included gratuitous statements (which it does not) purporting to overrule *Wright* on the difference between the contractual language needed for individuals and unions to waive employees' right to a judicial forum on statutory claims, such remarks would have been *dicta*.

damages is unenforceable, then "such award shall be limited to a maximum of 10% of any proven recoverable actual compensatory damages … or to the least amount permitted by law"; and (iii) punitive damages may be recovered "only upon a showing of proof beyond a reasonable doubt of conduct permitting recovery of such damages." (Doc. 22, Exh. A, ¶ 15.) According to Campbell, these limitations on recoverable punitive damages, and the concomitant stiffening of her burden of proof, are unenforceable because they are "inconsistent with statutory discrimination laws" and "completely at odds with the 1991 amendments to the Civil Rights Act." (Doc. 28, at 5.) As grounds for this contention, Campbell cites the familiar proposition that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute." *Gilmer*, 500 U.S. at 26.

Assuming (without deciding) that the constraints imposed by the arbitration agreement on Campbell's ability to recover punitive damages and her burden of proof in obtaining them are unenforceable, that defect would enable her to avoid arbitration only if the offending provisions are not severable. Indeed, the law is clear that if some provisions of an arbitration clause are invalid, "then the court must determine whether the unenforceable provisions are severable. Severability is decided as a matter of state law. … If the offensive terms are severable, then the court must compel arbitration according to the remaining, valid terms of the parties' agreement." *Terminix Int'l Co., LP v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1331 (11th Cir. 2005). The punitive damages provisions to which Campbell objects are plainly severable from the remainder of the agreement. After all, the agreement on its face contains a severability clause reflecting the parties' intent that, if any provisions are deemed unenforceable, the remaining provisions will remain in full force and effect.[5] Alabama courts consistently enforce such clauses to give effect to the favored status of severability under Alabama law. *See, e.g., Sloan Southern Homes, LLC v. McQueen*, 955 So.2d 401, 404 (Ala. 2006) (noting that Alabama courts excise "void or illegal provisions in a contract, even in the absence of a severability clause" and that courts have a general duty "to preserve so much of a contract as may properly survive its invalid and ineffective provisions") (citations omitted). Thus, an arbitrator could, if it wished,

---

[5] In particular, the agreement provides as follows: "Should any paragraph herein, or portion thereof, be deemed void, voidable, and/or unenforceable for any valid legal reason all other paragraphs and the remaining valid portion(s) of such paragraph(s) shall remain valid and enforceable." (Doc. 22, Exh. A, ¶ 13.)

sever all of the punitive damages restrictions and burden-of-proof language and proceed with arbitration in accordance with the remaining, valid terms of the parties' agreement.

Insofar as Campbell argues that this Court (rather than an arbitrator) should determine the validity of the punitive damages provisions, that contention clashes with binding precedent. If they are invalid, those punitive damages restrictions are capable of being severed, leaving in their wake a fully valid and enforceable agreement to arbitrate. So regardless of whether the punitive damages provisions are or are not enforceable, this action would be proceeding in arbitration, not in court. The Eleventh Circuit has explained in analogous circumstances that, "[w]hether the agreement is valid as written or suffers invalid provisions that must be removed under the forgiving eye of the severance clause, there is a valid agreement to arbitrate in place. Since the case is going to arbitration, an arbitrator and not a court should decide the validity of the remedial restriction provisions, because a court compelling arbitration should decide only such issues as are essential to defining the nature of the forum in which a dispute will be decided." *Anders*, 346 F.3d at 1032-33 (citations omitted). The same is true here. This case is going to arbitration, notwithstanding the validity (or lack thereof) of the severable restrictions on punitive damages. Because ruling on the validity of the punitive damages restrictions is not essential to defining the nature of the forum in which this dispute will be decided, *Anders* teaches that the Court should leave that question for the arbitrator.[6]

In short, plaintiff's objection to the Motion to Compel Arbitration alleging that certain terms pertaining to punitive damages are unenforceable is conclusively defeated by severability

---

[6] Plaintiff cites the Supreme Court's recent *Rent-A-Center* decision for the proposition that in the absence of a so-called "delegation provision" (*i.e.*, a provision delegating to the arbitrator gateway issues of arbitrability), this Court must decide whether the punitive damages concerns she raises render the agreement unenforceable. There is no apparent tension between *Rent-A-Center* and the above discussion. *Rent-A-Center* provides that "[i]f a party challenges the validity … of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement." 130 S.Ct. at 2778. But this Court has considered that challenge and has found that, even if Campbell is correct that the punitive damages restrictions and burden-of-proof allocation terms are unenforceable, the precise agreement to arbitrate remains valid and enforceable because the offending provisions are severable. As such, there is no reason for this Court to adjudicate the validity of the punitive-damages limitations because the case is properly referred to arbitration, irrespective of how that question is answered.

principles. Even if the objected-to language is invalid, it is severable, and arbitration would remain warranted under the remaining, valid provisions of the parties' agreement.

   D.     **The At-Will Employment Clause.**

Campbell's third ground for opposing the Motion to Compel Arbitration is that the agreement is "void because it conflicts with federal law and permits racially discriminatory decision-making." (Doc. 28, at 6-7.) This argument centers on language in the agreement, separate and apart from the arbitration provision, specifying that "the nature of the Employee's association with CMS is and shall remain that of an employee-at-will." (Doc. 22, Exh. A, ¶ 4.) According to plaintiff, this innocuous at-will statement "impermissibly strips Campbell of her federally protected rights concerning discrimination." (Doc. 28, at 8.)

Plaintiff's contention fails for two reasons. First, the phrase "employee at-will" enjoys widespread utilization and acceptance in employment agreements, manuals, contracts, and handbooks in the State of Alabama, and throughout the United States. The Court is unaware of a single published opinion – and plaintiff has cited none – holding that such a provision is antithetical to public policy or that an employee is divested of protections under Title VII, the ADEA and other civil rights laws by virtue of her "at-will" status. There is overwhelming authority to the contrary.[7] Second, even if plaintiff were correct that "at-will" status constitutes a

---

[7] *See, e.g., Adamson v. Multi Community Diversified Services, Inc.*, 514 F.3d 1136, 1153 (10th Cir. 2008) ("Title VII only prohibits discrimination on the basis of certain, invidious factors. Employers are free to terminate at-will employees for any other reason …."); *Williams v. London Utility Com'n*, 375 F.3d 424, 428 (6th Cir. 2004) ("If Mr. Williams has no contract, he is an employee-at-will … and can be fired for any reason or no reason at all (except for a discriminatory reason)"); *Walker v. Abbott Laboratories*, 340 F.3d 471, 472 (7th Cir. 2003) (confirming availability of § 1981 race discrimination claims in at-will employment relationships); *Skinner v. Maritz, Inc.*, 253 F.3d 337, 342 (8th Cir. 2001) ("an employer may discharge an at-will employee for any reason or no reason, but the employer may not violate § 1981 by discharging an at-will employee for a racially discriminatory reason"); *Grant v. Chicago Park Dist.*, 1995 WL 555020, *5 n.5 (7th Cir. Sept. 14, 1995) ("even at-will employees may not be discharged for discriminatory reasons"); *Pearson v. John Hancock Mut. Life Ins. Co.*, 979 F.2d 254, 258 (1st Cir. 1992) ("The fact that one's employment is at will does not mean that his employer can terminate him for invidiously discriminatory reasons"); *E.E.O.C. v. California Psychiatric Transitions, Inc.*, --- F. Supp.2d ----, 2010 WL 2754358, *16 (E.D. Cal. July 9, 2010) ("At-will employment is not a defense to a termination for discriminatory reasons."); *Clinkscales v. Children's Hosp. of Philadelphia*, 2009 WL 1259104, *6 n.10 (E.D. Pa. May 7, 2009) ("Of course, at-will employment does not insulate an employer from liability if it terminates an employee for discriminatory reasons"); *Daisley v. Riggs Bank, N.A.*, 372 F. Supp.2d 61, 67 n. 2 (Continued)

bar to Title VII, § 1981, and ADEA protections, that argument would be unavailing because the "at-will" language constitutes an entirely separate, and severable, provision of the agreement, distinct from the arbitration clause. As a matter of well-settled FAA law, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Center*, 130 S.Ct. at 2778. This is because "[a]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Id.* (citation omitted). So even if the "at-will" designation were somehow a categorical bar to Campbell's right to invoke federal discrimination laws (which it unquestionably is not), that defect would not compromise the arbitration provision because, as a matter of substantive federal arbitration law, the arbitration provision is severable. Simply put, plaintiff would remain equally obligated to arbitrate her claims against CMS/Pilot whether the "at-will" language was present or absent from the agreement.

Accordingly, the "at-will" language in the agreement does not constitute a waiver of Campbell's statutory rights under federal anti-discrimination statutes. Even if it did, that language is severable and has no bearing on the validity or enforceability of the arbitration clause. Plaintiffs' objection is unavailing.

### E. *Defendant's Purported Failure to Sign the Agreement.*

Campbell's final ground for opposing enforcement of the arbitration agreement she entered into with CMS/Pilot is that the agreement is "unsigned by the company." (Doc. 28, at 8.) According to plaintiff, "[a]n unsigned agreement is not valid" to bind either party. (*Id.*) This argument may be disposed of quickly. It is well-settled that an employer signature is not necessary for an arbitration agreement to be valid. *See Caley*, 428 F.3d at 1369 ("We readily

---

(D.D.C. 2005) ("at-will employees 'undoubtedly' may not be terminated for illegally discriminatory reasons") (citation omitted); *Pouncy v. Vulcan Materials Co.*, 920 F. Supp. 1566, 1578 (N.D. Ala. 1996) ("an employer can discharge an at will employee for a good reason, a bad reason, or no reason at all, as long as the discharge is not the result of illegal discrimination"); *Grier v. Partek Industries, Inc.*, 903 F. Supp. 1480, 1489 (M.D. Ala. 1995) ("at-will employment contracts can be terminated by either party regardless of whether the employer's motive is justified as long as the reason is not discriminatory"). Perhaps an at-will employee in Alabama cannot bring a common-law claim for breach of contract or wrongful termination based on a discriminatory discharge; however, her at-will status in no way limits her ability to sue her employer for violation of federal civil rights laws.

conclude that no signature is needed to satisfy the FAA's written agreement requirement."). "Nothing in the FAA suggests that a 'written provision' must be signed to be enforceable." *Id.* at 1369-70 (finding written agreement to arbitrate for FAA purposes where employees' acceptance of agreement was by continuing their employment and was not in writing). More importantly, the parties' most recent and controlling agreement (*i.e.*, the agreement dated June 28, 2007), is in fact signed by both Campbell and the company. Plaintiff's objection to unsigned arbitration agreements is misplaced, as both a legal and a factual matter.

### F. *Dismissal or Stay.*

Having rejected all of Campbell's arguments against enforcement of the arbitration provision, the only remaining question is one of remedy, to-wit: Whether this action should be dismissed under Rule 12(b)(1) or whether it should be stayed pending arbitration. CMS/Pilot has requested both remedies in the alternative.

Where a plaintiff initiates litigation without satisfying arbitration requirements, courts routinely stay rather than dismiss the proceedings to allow for implementation of the agreed-upon dispute resolution mechanism. *See, e.g., Klay v. All Defendants*, 389 F.3d 1191, 1203-04 (11th Cir. 2004) ("Pursuant to Section 3 of the FAA, a district court shall stay a pending suit upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under a valid arbitration agreement.") (citation and internal quotation marks omitted); *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) ("the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright") (citations omitted).[8] Accordingly, the Court will stay, rather than dismiss, Campbell's claims against CMS/Pilot pending the outcome of arbitration proceedings.

---

[8] *See also Fields v. NCR Corp.*, 683 F. Supp.2d 980, 991 n.9 (S.D. Iowa 2010) ("Given the FAA's use of the mandatory term 'shall,' the Court finds it appropriate to issue a stay, rather than to dismiss Plaintiff's claims."); *Tracfone Wireless, Inc. v. Blue Ocean's Distributing, LLC*, 616 F. Supp.2d 1284, 1285 (S.D. Fla. 2009) (proper remedy for party's failure to comply with arbitration provision was stay, rather than dismissal, where party had requested stay); *R&F, LLC v. Brooke Corp.*, 2008 WL 294517, *2 (D. Kan. Jan. 31, 2008) (where plaintiff filed suit despite provision requiring parties to engage in mediation before going to court, proper remedy was to stay the litigation pending mediation); *Scurtu*, 523 F. Supp.2d at 1328 (electing to stay, rather than dismiss, plaintiff's claims that were subject to binding arbitration agreement); *RoadTechs, Inc. v. MJ Highway Technology, Ltd.*, 79 F. Supp.2d 637, 640 (E.D. Va. 2000) ("it is within the district court's discretion whether to dismiss or stay an action after referring it to (Continued)

**III.    Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1. Defendant's Motion to Dismiss Pursuant to Rule 12(b)(1) or, in the Alternative, to Compel Arbitration (doc. 21) is **granted in part** and **denied in part**. The Motion is **granted** insofar as CMS/Pilot seeks a stay of Campbell's claims, but is **denied** insofar as defendant seeks outright dismissal of this action.

2. All claims brought by Campbell against CMS/Pilot in this action are **stayed** pending arbitration.

3. Notwithstanding the determination that plaintiff's claims must be arbitrated, this Court retains jurisdiction to confirm or vacate the resulting arbitration award under 9 U.S.C. §§ 9-10. *TranSouth Financial Corp. v. Bell*, 149 F.3d 1292, 1297 (11th Cir. 1998). To enable the Court to monitor this action as it wends through the arbitration process, CMS/Pilot is **ordered** to file, on or before the **third Friday of each month**, beginning in **September 2010**, a written report reflecting the status of the arbitration proceedings.[9]

DONE and ORDERED this 19th day of August, 2010.

                                          s/ WILLIAM H. STEELE
                                          CHIEF UNITED STATES DISTRICT JUDGE

---

arbitration"); *Cecala v. Moore*, 982 F. Supp. 609, 613 (N.D. Ill. 1997) ("if the dispute at issue is found to arise out of or relate to the instant contract and so to be within the scope of the mediation clause, then this court concludes that it has the authority to stay the proceedings").

[9] This Court is empowered to take action as needed to ensure that the parties fulfill their arbitration commitment in a reasonably prompt and diligent manner. *See generally Martens v. Thomann*, 273 F.3d 159, 179 n.14 (2nd Cir. 2001) ("we note that those courts to have addressed the issue have held that a court which stays an action pending arbitration nevertheless maintains jurisdiction to regulate the parties' conduct by issuing sanctions, including dismissal for failure to prosecute"); *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 902-03 (D.C. Cir. 1998) (affirming district court's imposition of sanctions against party engaged in dilatory tactics in arbitration proceedings previously ordered by that court, where district court had retained jurisdiction during stay); *Perry v. Norwest Financial Alabama, Inc.*, 1998 WL 964987, *1 (S.D. Ala. Dec. 9, 1998) (explaining that, after staying case for arbitration, district court "continues to have certain powers over the parties and their arbitral proceeding ... [and] can impose sanctions on the parties for employing dilatory tactics which frustrate the arbitral process").